Filed 7/29/21  Harmon v. DiRubio CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GARY HARMON et al., | |
| Plaintiffs and Appellants, | G060137 |
| v. | (Super. Ct. No. 2015-1-CV-282893) |
| MIKE DIRUBIO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Santa Clara County, Carrie A. Zepeda, Judge.  Affirmed.  Request for judicial notice.  Denied.

Grellas Shah, Dhaivat H. Shah, David I. Siegel, William Howlett Bohannon; Cazzell & Associates and Maryann Cazzell for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

\*        \*        \*

## INTRODUCTION

Gary Harmon, Mark Masoni, and ISE Entertainment Corporation (ISE) (collectively, appellants) appeal from a judgment in favor of Mike DiRubio. Appellants sued DiRubio for defamation and breach of fiduciary duty. Following a bench trial, the court found that appellants had failed to establish any of their claims.

We affirm for five reasons. First, the trial court's determinations regarding witness credibility were supported by the evidence at trial. Second, the trial court did not err in denying appellants' motion for leave to amend, made the day before the trial started, because the proposed amendment was unreasonably delayed and would have been prejudicial. Third, the court's finding that Harmon and Masoni failed to prove the falsity of any of the allegedly defamatory statements made by DiRubio is supported by substantial evidence. Fourth, the court did not err in concluding that ISE lacked standing to pursue its claim for breach of fiduciary duty against DiRubio because ISE was not qualified to conduct intrastate business in California and its claims arose from that intrastate business. Fifth and finally, even if ISE had standing, the court explained why ISE had failed to prove a breach of any fiduciary duty by DiRubio to ISE.

## STATEMENT OF FACTS

Harmon is experienced in the fields of media arts, film, music, theater, and live concert production. ISE is a Nevada Corporation founded by Harmon that produces films, television shows, and concerts. Harmon also developed a program called Arts Related Technical Training for Entertainment Careers (ARTTEC), which provided high school students with hands-on training and experience in the entertainment industry. ISE owned the ARTTEC program.

Harmon and Masoni met when both were high school teachers in Morgan Hill, California, and Masoni began working with Harmon on ARTTEC. Harmon and Masoni also worked for Sobrato Arts Foundation for Education (SAFE), a nonprofit organization that also provided career training in the entertainment field to high school

2

students. DiRubio began working with Harmon and Masoni at ISE and ARTTEC in October 2008, initially as a volunteer.

In 2013, DiRubio invested $300,000 in ISE in exchange for 30,000 shares of ISE stock. DiRubio claimed that Harmon stole that money for his own use. ISE's former president, Sean Rangel, testified DiRubio's investment was used "for different productions that ISE had been involved with." Harmon testified that DiRubio's investment was also used to make a loan to SAFE, for ISE's business expenses, and to acquire and operate a business called Boulder Creek Guitars. However, ISE did not maintain financial statements, and all testimony was based on limited information taken from its bank statements.

During his involvement with ISE, DiRubio referred to himself as a "partner" of ISE, and used that title on his LinkedIn page. DiRubio was an authorized signer on two of ISE's bank accounts, although he was removed from those accounts without notice in December 2014. Harmon testified that DiRubio "had full authority and management ability with the corporation," including "[w]ho we would do business with, what kind of productions we would engage in, . . . who would be the musicians that we would book for these productions or other artists, but his primary focus or interest was with music, how money would be spent, what contracts we would enter into with vendors, all of those things."

Harmon testified that in August 2014, the day after ISE produced a concert for Keifer Sutherland and his band, DiRubio called ISE's vendors, including providers of staging, lighting, audio, and security services, and told them not to work with ISE because Harmon was a "thief" and was planning to rip everyone off. On Facebook and in text messages, DiRubio stated that Harmon stole $250,000 from him, embezzled from ISE, and committed fraud. On May 7, 2015, DiRubio sent an e-mail to Masoni's wife, Lisa Masoni, stating that Harmon and Masoni had conspired to ruin his life, stole $250,000 from him, and that her husband was a "minion" and a "fraud."

DiRubio confirmed that he had told a number of people that Harmon was a criminal and had stolen money from him. DiRubio testified he was aware that Harmon had been dismissed from SAFE due to financial improprieties. DiRubio also testified he had heard Harmon lost his job teaching at Ann Sobrato High School because he was caught stealing equipment from the school and had been arrested.

In October 2016, Harmon was charged in a felony complaint with multiple charges of grand theft and making untrue statements with the intent to take personal property in violation of Corporations Code sections 25401 to 25540, subdivision (b), and was ultimately convicted on several counts. One of the felony counts for violation of the Corporations Code involved the sale of ISE stock to DiRubio.

## PROCEDURAL HISTORY

On July 9, 2015, Harmon, Masoni, and ISE filed a complaint for libel, slander, fraud, breach of contract, breach of fiduciary duty, rescission, and cancellation of instrument against DiRubio. At the start of trial in November 2017, appellants moved to amend the complaint to add claims for interference with contract, interference with prospective economic advantage, and unfair competition. The court denied the motion as untimely and prejudicial to the defendant. The only claims that went to trial were ISE's claim for breach of fiduciary duty and the defamation claims by Harmon and Masoni.

After a bench trial, the trial court issued a detailed statement of decision. The court found that Harmon and Masoni had failed to establish the element of falsity on the defamation causes of action. The court also found that ISE had no standing to maintain its cause of action against DiRubio for breach of fiduciary duty because, as a foreign corporation, ISE had not registered to conduct intrastate business in California, and the breach of fiduciary duty claim arose out of its intrastate business. The court nevertheless addressed the merits of the claim and found that DiRubio did not owe ISE or its shareholders a fiduciary duty.

4

DiRubio and ISE stipulated that ISE would pay DiRubio $248,000 and in exchange DiRubio would surrender his share certificate for 30,000 shares of ISE stock. Judgment was entered, and Harmon, Masoni, and ISE filed a notice of appeal.

## DISCUSSION

### I.

#### TRIAL COURT'S DETERMINATIONS REGARDING CREDIBILITY

As the trier of fact at a bench trial, the court was "the ultimate judge of the weight and credibility of witness testimony." (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016) 6 Cal.App.5th 1258, 1276.) The trial court found "Mr. DiRubio was credible and Mr. Harmon, Mr. Masoni and Mr. Altamirano[1] were not credible." The court found that Harmon and Masoni had "a history of fabricating evidence in and outside of court proceedings in an attempt to gain an advantage." Specifically regarding the defamation claims, the court "found Mr. DiRubio to be more credible than Mr. Harmon and Mr. Masoni in establishing each of these facts." In conclusion, "[t]he court did not find Mr. Harmon, Mr. Masoni or their witnesses to be credible or knowledgeable about any material facts and [appellants] did not produce other credible documents or other evidence to support their claims."

The court's findings as to the credibility of the witnesses were fully supported by the evidence at trial. In May 2013, Harmon was fired as executive director of SAFE for being "negligent in [his] responsibilities of maintaining accurate financial records," and for using the SAFE name for his own personal gain. In July 2013, SAFE publicly announced that Harmon, DiRubio, Masoni, and Altamirano were "no longer employed by, or have any affiliation with" SAFE.

Later, Harmon, Masoni, DiRubio, and Altamirano sued SAFE for unpaid wages. DiRubio admitted during the trial of the present action that they created and

---

[1] Matthew Altamirano was a director and shareholder of ISE.

5

signed false employment contracts before filing the lawsuit against SAFE in order to bolster their position in the litigation. Although Harmon and Masoni testified that the employment contracts were signed at the time the various employees were hired, Harmon admitted signing an employment contract for DiRubio's wife, who never ended up working at SAFE but was named as a plaintiff in the employment lawsuit against SAFE.

The court's findings regarding credibility were also supported by evidence regarding a commercial lease entered into on behalf of ISE. Two copies of the lease agreement were admitted in evidence at trial. One had been signed by DiRubio, Harmon, and the lessor. The other was purportedly signed by Masoni, Harmon, and the lessor. Masoni testified that the lessor needed an original signed copy for purposes of a property refinancing, and could not find the original of the lease signed by DiRubio, so he needed a new copy backdated to the original signing date.

The lessor, however, testified his signature was not on the second lease, he could not recall having requested that Masoni sign a second lease, he did not refinance the property, and he never requested that Masoni backdate his signature on a lease. The trial court found the lessor "was credible and that the second lease was not executed at his request, and it was not signed by him." The court also found: "Mr. Masoni signed the second lease agreement and that Mr. Masoni's signature was inserted in an attempt to cover up Mr. DiRubio's signature on the original document. The tampered document had a negative impact on Mr. Masoni's credibility."

The testimony of the employees, directors, and officers of ISE regarding the company's finances and records also negatively affected their credibility. At various points in time, Harmon, Masoni, Rangel, and Altamirano were officers or directors of ISE. Harmon had no concrete knowledge of ISE's or ARTTEC's finances, and did not recall ever seeing financial statements for ISE. Altamirano had no knowledge of ISE's finances, had never seen any financial information for the company, and specifically did not know what revenue had been earned on any of the projects on which he had worked.

6

Masoni, the ISE president since 2014, "[was not] involved with the banking of the organization," and was unaware how investments in ISE were spent.

Sean Rangel, ISE's initial president and current director, was unable to answer any questions regarding ISE's business and operations. Rangel had no idea where or how the company's books were maintained; he had never examined the company's books. He had no idea what the company was worth. He had no idea how many shares of stock had been issued by the company, and did not know how many shares any individual person owned. He was unaware whether, as a shareholder, he had ever received any dividends from the company. Although he was a director of the company, he was not involved in any projects and could not remember the last time he had been. He did not know whether or when ISE had filed to do business before incorporating. He had no authority to act on behalf of ISE with the banks, and he did not keep track of the company's financials. He testified he had never seen the document purporting to be ISE's financial statement, and knew little or nothing about the items listed on that statement.

## II.

### DENIAL OF LEAVE TO AMEND

We review the denial of a motion for leave to amend a complaint for abuse of discretion. (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.) Unreasonable delay alone can justify denial of a motion for leave to amend. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486-487.)

Here, the trial court denied the motion for leave to amend as untimely and prejudicial to DiRubio. Appellants fault the trial court for failing to specify in the statement of decision how the amendment would prejudice DiRubio.[2] The record makes clear that the motion was denied in an off-the-record hearing; it is appellants' obligation

---

[2] A ruling on a motion for leave to amend is not a "trial of a question of fact by the court," and a statement of decision is therefore not required. (Code Civ. Proc., § 632.)

7

to provide a complete record.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58.)

Despite appellants' contention that the proposed amended complaint would not have substantially altered the facts or claims to be litigated, DiRubio's opposition to the motion for leave to amend contended that the proposed amendment would (1) change the focus of the defamation claims, (2) add allegations involving different facts and different people, (3) add new claims for business torts, and (4) change the focus of the claim for breach of contract.  DiRubio argued that the proposed amendment would require a continuance of the trial to allow for new pleadings and additional discovery: "At a minimum, justice would require an opportunity for discovery as to the litany of new facts being alleged, and filing a new answer, and filing a cross-complaint, all of which would require a continuance of the trial."

Amendments of the type sought by appellants on the day before trial are sufficiently prejudicial to justify denial of leave to amend.  In *Magpali v. Farmers Group* (1996) 48 Cal.App.4th 471, 486, the appellate court concluded that the trial court did not err in denying a request for leave to amend "proposed on the eve of trial," almost two years after the original complaint had been filed.  The plaintiff in that case failed to explain the lengthy delay in seeking to add a cause of action to the complaint.  (*Ibid.*)  Further, the defendant explained that it would have to identify and depose witnesses to testify about the new allegations in the proposed amended complaint.  (*Id.* at pp. 486-487.)[3]

---

[3]  We recognize the principle of liberality of amendment, but each case cited by appellants is easily distinguishable from the present case.  (See *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761 [party opposing amendment would not have been prejudiced, and proposed amendment related to the same general set of facts]; *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 564-565 [denial of leave to amend to replace escrow instructions with contract for sale of property as an exhibit to the complaint was abuse of discretion]; *Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530 [denial of leave to amend was abuse of discretion when no trial date had been set].)

In this case, the amendment sought by appellants would have required additional pleadings, discovery, and motion practice, and would necessarily have delayed the trial. The amendment was requested the day before trial, more than two years after the complaint had been filed. The motion for leave to amend was unreasonably delayed and would have been prejudicial; the trial court did not err in denying it.

III.

SUFFICIENCY OF THE EVIDENCE OF THE DEFAMATION CLAIMS

Harmon and Masoni contend substantial evidence does not support the trial court's finding that they had failed to prove their defamation claims against DiRubio. ""'"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*." [Citation.] The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials. [Citation.]'" (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1489.)

"It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one. [Citation.] 'A party who challenges the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient. [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of

9

the record when appellant has shirked his responsibility in this respect.'" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409, italics omitted.)[4]

The trial court found Harmon and Masoni failed to prove DiRubio's statements were false. Defamation torts involve (1) a publication that is (2) false, (3) unprivileged, and (4) has a natural tendency to injure or cause special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)[5] DiRubio admitted saying Harmon and Masoni were criminals and telling several people that Harmon had stolen money from him. "'[T]he defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the "gist or sting" of the remark.'" (*Medical Marijuana, Inc. v. ProjectCBD.com, supra*, 46 Cal.App.5th at p. 884.)

DiRubio stated that Harmon had stolen the money DiRubio thought he was investing in ISE and that Harmon would be arrested and go to jail. Harmon claimed he used the funds from DiRubio for ISE, but Harmon failed to maintain any records of ISE

---

[4] If an appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see *Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832 ["Given this type of presentation the contention that the findings are not supported by substantial evidence may be deemed waived."]; *Hauselt v. County of Butte* (2009) 172 Cal.App.4th 550, 563 ["plaintiff has forfeited [the substantial evidence] argument because he has cited only the evidence favorable to him"].) In this case, appellants' opening brief set forth only the evidence favorable to appellants, and this court could have deemed the arguments based on the substantial evidence rule to have been forfeited. We nevertheless proceed to address the merits of appellants' arguments.

[5] Appellants contend that DiRubio had the burden of proving truth as a defense. (*Ringler Associates, Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180.) Because this case involves matters of public interest—the commission of a crime and fraud by individuals working with high school students—even though Harmon and Masoni are private figures, they bore the burden of proving the statements were false. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 888, fn. 12.)

transactions, including expenses. Harmon unilaterally removed DiRubio's access to ISE's bank accounts. DiRubio reported Harmon's actions to the Morgan Hill Police Department in August 2014. The Santa Clara County District Attorney subsequently filed a felony complaint against Harmon alleging, in part, that DiRubio was one of Harmon's victims.[6]

In an e-mail to Masoni's wife, DiRubio informed her that he had reported Harmon's illegal conduct to the police and that DiRubio believed Masoni was collaborating with Harmon. DiRubio specifically referenced the two commercial leases and the SAFE employment agreements.

Masoni denied being a criminal or stealing any money from DiRubio. Masoni testified that he was damaged by DiRubio's statements about him because as an ISE investor anything that hurt the company hurt him, due to a previous serious head injury he was more susceptible to suffering depression and anxiety and these statements exacerbated those conditions, they caused Masoni to be fearful for his safety in the community, and his reputation had been damaged. Masoni acknowledged that at his deposition he did not identify any statements other than those in the e-mail to his wife that he believed were defamatory. Masoni was unaware of anyone other than his wife

---

[6] Harmon was arrested and subsequently convicted of five criminal charges. His appeal from the judgment of conviction is pending. Harmon asks this court to take judicial notice of two documents filed with the Sixth District Court of Appeal in *People v. Harmon* (H047526): (A) order filed April 3, 2020, granting a motion to augment and granting a motion for early transfer of exhibits; and (B) notice dated May 19, 2021, that the augmented record was filed and the opening appellate brief would be due within 30 days. Harmon contends that these documents establish that his appeal from the criminal conviction is still pending, and therefore the issue of the truth or falsity of DiRubio's statements is unresolved. These documents were not before the trial court, and the court's judgment was not based on the results of the criminal trial. The documents are therefore irrelevant to our review, and we deny the request for judicial notice. We also deny the request by Harmon's counsel during oral argument in this matter that we abate these proceedings until the criminal matter is final.

and attorney who had read the e-mail, but acknowledged that he shared it with his trusted friends and with a bartender who asked to read it. He did not lose any income as a result of the e-mail. Masoni was unaware of any other defamatory statements made by DiRubio about him.

The trial court's findings that the gist of DiRubio's statements regarding Harmon and Masoni was true and that Harmon and Masoni had therefore failed to establish that DiRubio's statements were false were supported by substantial evidence.

## IV.

### ISE'S CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST DIRUBIO FAILS

#### A.

##### *ISE LACKED STANDING*

In the statement of decision, the trial court found that ISE was a foreign corporation that was not authorized to transact intrastate business in California, and had failed to otherwise comply with the relevant portions of the Corporations Code. The court therefore dismissed ISE's claims against DiRubio. We review the trial court's express factual findings in the statement of decision, and any implied findings, for substantial evidence. (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009.) We review any legal issues de novo. (*Ibid.*)

A foreign corporation may not transact intrastate business in California before obtaining a certificate of qualification from the Secretary of State (Corp. Code, § 2105, subd. (a)), and may not file a lawsuit based on its intrastate business until it has complied with section 2105 and paid any fees and penalties (*id.*, § 2203, subd. (c)).

ISE concedes it is a foreign corporation. It contends, however, that it was not required to register with the California Secretary of State, and that DiRubio failed to meet his burden of proving that ISE lacked standing.

To establish ISE's lawsuit could not be pursued under Corporations Code section 2203, DiRubio was required to prove "(1) the action arises out of the transaction

12

of intrastate business by a foreign corporation; and (2) the action was commenced by the foreign corporation prior to qualifying to transact intrastate business." (*United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740.)  The trial court found that DiRubio had proven both prongs of this test.

As to the first prong, the statement of decision reads, in relevant part:  "ISE was in the business of producing concerts in California in 2013 and 2014, and its allegations of defamation, breach of fiduciary duty and the alleged losses it claims it suffered due to Mr. DiRubio arose out of those business transactions in California."  This finding was amply supported by the record.  The complaint itself alleges:  "ISE is a television, film, and concert production company *that has been doing business in Santa Clara County for approximately 8 years* and has enjoyed a good reputation in the industry."  The complaint also makes specific allegations about DiRubio's allegedly defamatory and otherwise injurious conduct in connection with ISE's business dealings in California.  At trial, Harmon testified that DiRubio's claimed breaches of fiduciary duty led to the financial failure suffered by the Music for Heroes concert that ISE put on in California in October 2015, and that DiRubio's insistence that a friend be the drummer for an act at a concert in California caused harm to ISE.  Harmon also testified that DiRubio violated his fiduciary duties to ISE by booking bands directly at a local venue rather than on behalf of ISE.

As to the second prong, the complaint was filed by ISE on July 9, 2015. ISE became qualified to transact business in California, at the earliest, on November 3, 2017.  The lawsuit was therefore commenced before ISE became qualified to transact business in California.  The trial court did not err in finding that ISE lacked standing pursuant to Corporations Code section 2203, subdivision (c).

13

B.

Although the trial court had already dismissed ISE's claim for breach of fiduciary duty pursuant to Corporations Code section 2203, it nevertheless addressed the merits of the claim in the statement of decision.

To prevail on a claim of breach of fiduciary duty, ISE was required to prove the existence of a fiduciary relationship between it and DiRubio, DiRubio's breach of his fiduciary duty, and damage to ISE proximately caused by the breach. (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 526, fn. 3.) "'Whether a fiduciary duty exists is generally a question of law. [Citation.] Whether the defendant breached that duty towards the plaintiff *is a question of fact*. [Citation.]'" (*Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 915.)

The complaint alleged that DiRubio was a director, production manager, and agent of ISE, and therefore owed ISE a fiduciary duty. Harmon testified that DiRubio "had full authority and management ability within the corporation. . . . [H]is primary focus or interest was with music, how money would be spent, what contracts we would enter into with vendors, all of those things." Altamirano testified: "Mike's role with ISE was to coordinate productions and coordinate vendors."

Corporate directors unquestionably owe a fiduciary duty to the corporation and its shareholders. (Corp. Code, § 309; *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1037.) Appellants offered evidence that DiRubio was elected as a director at a special meeting of ISE's shareholders in Las Vegas on June 24, 2013. However, appellants' evidence did not establish that the shareholders' meeting actually occurred.

Rangel, who was the president of ISE and a director at the time, could not remember who sent out the special notice of the shareholders' meeting or who served as secretary at the meeting. Harmon testified that the minutes of the meeting were accurate,

14

but he could not remember who kept the minutes, who prepared and sent the special notice, whether he received the special notice, or whether he was actually present at the meeting.

According to the minutes of the meeting, it occurred at 10:15 a.m. on June 24, 2013, in Las Vegas, Nevada. However, evidence presented at trial confirmed that Harmon and DiRubio opened a bank account at a Wells Fargo bank in Morgan Hill, California at 3:46 p.m. on June 24, 2013. Text messages admitted at trial also showed that DiRubio and Harmon were discussing meeting at ISE's new leased space in Morgan Hill at about 12:30 p.m. on June 24, 2013, and were discussing eating at a restaurant in Morgan Hill at about 4:00 p.m. on the same date. There was no evidence as to how DiRubio and Harmon could have been in all those places on the same day.

Further, Harmon testified that ISE filed for reinstatement with the Nevada Secretary of State on June 26, 2013, two days after allegedly appointing DiRubio to the board of directors. Even if the shareholders' meeting had occurred, the appointment of DiRubio to the Board would have been a null act because the corporation did not have the ability to validly exercise any corporate power on June 24, 2013.

Based on the foregoing, the court found that the alleged shareholders' meeting never occurred, and DiRubio was never elected as a director of ISE: "It is highly suspicious that a company that claims not to engage in contracts with vendors or performers and fails to keep financial records of any transactions, profits or losses would keep minutes of a [shareholders'] meeting, especially where the president of the board and founder of the company do not have any recollection of who acted as the board secretary or who took the minutes."

The trial court also found that DiRubio was never a partner in ISE, but rather was "duped into believing he had invested in ISE" while his money was used for the benefit of others: "If Mr. Harmon and Mr. Masoni were running ISE as a legitimate business entity, they would have kept financial records, entered into contracts with

15

vendors and entertainers, properly registered the corporation with the Secretary of State, and they would have readily admitted to have paid taxes and shown receipts of having done so."

On appeal, appellants argue that DiRubio took on the role of ISE's agent, citing the following facts to establish the existence of a fiduciary duty between ISE and DiRubio: (1) DiRubio was not hired as an employee; (2) DiRubio was promised a salary, payments on a car lease, and insurance; (3) DiRubio was supposed to have check signing authority, and had an ATM card, although Harmon removed his authority at the bank; (4) DiRubio had full management authority over the company, including the ability to enter or break contracts with clients and vendors; and (5) DiRubio referred to himself as a partner of ISE in dealings with third parties, including on LinkedIn. The trial court found to the contrary: "There was no credible evidence to establish that Mr. DiRubio was required to work exclusively with [appellants], or that he used [appellants'] confidential and proprietary information for purposes unrelated to [appellants'] business interests and the advancement thereof, or that Mr. DiRubio disclosed any proprietary information to third parties."

We agree with the trial court. We conclude that no fiduciary relationship existed between DiRubio and ISE. There is no evidence DiRubio presented himself as the actual or ostensible agent of ISE, undertook to act solely for the benefit of ISE, or was elected to the ISE board. There is a reasonable inference that the minutes of the June 2013 shareholders' meeting were fabricated by appellants.

Finally, the trial court found that DiRubio did not breach any fiduciary duty and that appellants had failed to produce any evidence that they had suffered any damages. Appellants do not challenge these findings on appeal.

16

## DISPOSITION

The judgment is affirmed.  Because respondent did not appear, no costs are awarded.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

17